## TITLE TO VACATED PORTION OF STREET.

[Circuit Court of Lucas County.]

LUELLA PRICE ET AL V. THE CITY OF TOLEDO ET AL.

Decided, October 31, 1903.

*Street—Title to Portion Vacated Reverts to Present Adjoining Owners—Assessment for Street Improvement—Injunction Against Collection of, Because in Excess of Special Benefits—What Must Be Shown—Province of the Court in Reviewing Assessment—Improvement Begun Under a Statute Held Constitutional—And afterward Held Unconstitutional—Validity of Assessment Not Affected Thereby.*

1. Where a portion of a street, consisting of a narrow strip off one side of such street is vacated by a municipality and no longer used as a part of the street, the title to such strip goes to the owners of the lots adjoining it and theretofore abutting upon the street and does not revert to the original owners, and such lots after such vacation are still subject and liable to an assessment as abutting property for improving such street and it is immaterial that said strip was a part originally of lots other than those so held liable to assessment.
2. Where an assessment, according to benefits for a street improvement has been in all respects duly and regularly made and all the proceedings are complete, and no complaint is made by property owners until an action is commenced to enjoin the collection of such assessment on the ground that it exceeds the benefits the court will not grant such relief, unless the action of the council or other municipal authorities has been fraudulent or tantamount to fraud or the assessment is so excessive as to clearly and unquestionably exceed the special benefits to said property.
3. In such cases the court does not sit as a court of appeal to review the action of the municipal authorities and make a new assessment, upon the evidence, according to its judgment.
4. Statutes having been held constitutional by the Supreme Court, proceedings under them are not affected by subsequent decisions of the court overruling the former decisions, and holding such statutes unconstitutional; but they are to be regarded as constitutional, so far as such proceedings are concerned, and assessments made under them prior to the later decisions are valid.

HULL, J.; HAYNES, J., and PARKER, J., concur.

This action was brought by Luella Price and twenty others to enjoin the city of Toledo and its officials from levying and col-

lecting a certain assessment made for a pavement laid on Junction avenue in the city of Toledo. The assessment was made on the rule of benefits, not by the foot front. It is claimed that there were some irregularities in the proceedings, but it is complained chiefly that the assessment was in excess of the benefits and that, therefore, its collection should be enjoined. It is claimed that the benefits were very much below the amount of the assessments. The street, Junction avenue, is in the westerly part of the city and runs through what is spoken of as the "Polish Settlement," most of the people living in that vicinity being Polanders and owning small lots, worth from $200 up to $300 or $400, and, in some cases, a little beyond that, without the buildings, and it is urged that this assessment is very oppressive. It is claimed that notices were not given to some of the plaintiffs, as required by Section 2204, Rev. Stat., of the resolution passed by the city council declaring the necessity of this improvement. Mr. Taylor claims that there was no notice given to him. We find, however, that he was at the time living in a hotel, which was his home, and the notice was given to the clerk of the hotel, pursuant to his directions, he having directed the clerk to bring such notices to his room, and, after a time, directed that the notices should be left at the office of the Detwiler Company, or taken to that office. The officer whose duty it was to leave the notices testifies to leaving them with the hotel clerk and we are of the opinion that the notice was given in accordance with the statute. There were objections by some of the other plaintiffs that they were not served with notice, but their testimony is indefinite; some say they can not remember whether they received notice or not, but in the case of each one Mr. Voight testifies positively that he either served him personally or left the notices at his place of residence, or where he had been directed to leave them, and we find and hold that notices were served upon all of these parties as required by law, and, therefore, that the city had jurisdiction to proceed. Under a recent decision, 67 O. S., page 264 (*Joyce* v. *Barron, Treasurer*), it was held by the Supreme Court that failure to give this notice is fatal; that no assessment can be made without it; that it does not simply leave

open the claim of the party for damages, but that the notice is a prerequisite to the city obtaining jurisdiction over the party and his property. We hold in this case, however, that notice was in fact given.

Another objection to this assessment, as to five of the lots, is, that they do not abut upon the street improved. They did at one time abut upon the street, the property being appropriated for the street by the city, but, some time afterwards, a portion —a narrow, wedge-shaped strip along the side of the street— was vacated so as to straighten the lines of the street, this strip being eight or ten feet wide at one end and running down to a point at the other end, and lying in front of five of these lots, and it is urged that they can not be assessed because they do not now abut upon this street. We hold, however, that this can not be maintained. This strip of land was vacated by the city and no longer held for street purposes. It belonged at the time it was taken by the city to lots other than those in question in this case and lying in front of them; but, upon the vacation of this strip the title reverted, not to the original owners, but to the owners of the lots that did abut and bound upon the street before the vacation. It has been held in several cases that the title in such case reverts to the owners of the lots that did abut immediately upon the street before such strip was vacated. This question is discussed very fully in a well considered opinion by Judge Shearer in the Sixth Circuit Court Reports, 142 (*Stevens* v. *Shannon*). The first paragraph of the syllabus is:

"The vacation of the streets and alleys of a duly established addition to a municipal corporation extinguishes the interest of the public therein; and the title to such streets and alleys vests in the owners of the abutting lots."

This case was approved by the Supreme Court in *Kerr* v. *Commissioners* and in *Stevens et al* v. *Taylor, Excr., et al*, 51 O. S., 593; 64 O. S., 264, is also in point on this question. There is no question but that the title to this property is in these lot owners, and the effect of it is that this adds to their lots—they have that much more property—and it brings them to the street; it is immaterial that this strip still goes under the numbers of

the lots that it formerly belonged to, the truth and fact is that it has become a part of the lots of these owners adjoining it, and in the improvement of the street these lots are to be regarded as bounding and abutting upon the street. They do in fact abut upon the street and have all the advantages and benefits of it and there would be neither justice nor equity in holding that they can not be assessed for the improvement of the street, and we hold that they may be.

We come now to the question whether this assessment was so excessive that the court can interfere in behalf of these plaintiffs. It is claimed that it is largely in excess of benefits. This assessment was made under Sections 2271 and 2272 of the Revised Statutes, which are special acts applying only to the city of Toledo, allowing an assessment of twenty-five per cent. upon the value of the property after the improvement, but subject to the general rule that the assessment shall not exceed the benefit. There is a provision in Section 2272, however, that if three-fourths of the owners of the property upon a street petition for an improvement the owner signing the petition may be assessed in any amount—to the full value of his property, or even twice its value, but probably the courts would hold that it could not be assessed for more than the value of a man's property, for that would perhaps be confiscation. But in this case it is claimed by the city that the assessment did not exceed twenty-five per cent. of the value of the property after the improvement was made; and, further, that the assessment does not exceed the benefits. That was a question of fact contested on the trial before us and witnesses were called.

There are several decisions in this state on this question and the powers of a municipality in these matters and the power of the courts and the limitations upon municipal power in making assessments. The fundamental principle as stated by many of the decisions, is that the right to assess rests upon the basis of benefits to the property assessed; that the right is given to a municipality by reason of the fact that the property is specially benefited by the improvement; this is the "fundamental principle." If it were not for that—if it were not thus benefited—it would be taking property without due

process of law and making a man pay for an improvement by the municipality, which was of no special benefit to him, which would be the taking of property for public uses without compensation, and all these statutes and cases recognize this general principle.

As to just what the powers of the courts are in these matters, no definite rule has been laid down, perhaps, but the general question has been discussed in several cases. There are three of them in the 61st O. S. Reports. One is found on page 15 (*Walsh* v. *Barron*), where the Supreme Court say:

"The fundamental principle underlying an assessment made on property for the cost and expense of a local public improvement is, that the property is specially benefited by the improvement beyond the benefits common to the public and that a ratable assessment of the property to the extent of these benefits violates no constitutional right of the owner, and is just and proper. But it can in no case exceed the benefits without impairing the inviolability of private property."

On page 27 of this volume (*Birdseye* v. *Clyde*), is a case in which it is said, in the first paragraph of the syllabus:

"It is the general policy of our legislation to restrain the power of local assessment by fixing a limit on the amount that may be levied beyond which municipal corporations may not go; and unless the contrary clearly appears, an intention to adhere to that policy in the enactment of particular statutes relating to local assessments will be presumed, and a construction given to them allowing the application of the general limitations."

In the first case in the book (61 O. S., p. 1), the court say, in the syllabus:

"Where, in a suit brought to enjoin the collection of a street assessment as invalid, and the taking of property without due process of law, it appears that the ordinance levying the assessment provided that the cost and expense of the improvement should be asssesed upon the abutting property by the foot front, and not otherwise, but it also appears that an issue was made by the pleadings on the question whether or not the land so assessed was in fact benefited by the improvement to an amount in excess of the cost so assessed, which issue is found by the trial court against the plaintiff, and it is neither shown nor claimed that the cost and expense was not apportioned fairly

between the property of plaintiff affected by the assessment, and that of others so affected, the collection of such assessment should not be enjoined simply because the proceedings of the council in enacting the ordinance and levying the assessment do not show affirmatively that the question of benefit to the land was taken into consideration in levying such assessment.''

All these cases recognize the principle that there is a limitation somewhere upon assessments—either an arbitrary limitation or a certain per cent. of the value, or that the assessment shall in no case exceed the benefits.   In the statutes of the state applying to municipalities generally, for many years the limitation has been twenty-five per cent. of the taxable value of the property—the value at which it is listed for taxation.   In the first statute passed in this state on this subject—the original municipality act—the limitation was fifty per cent. of the value of the property after the improvement.   That was found to be too high and the statute was amended and the amount reduced to twenty-five per cent. of its taxable value.   These two statutes applying to Toledo, as stated, limit the assessment to twenty-five per cent. of the value of the property after the improvement.   These statutes are clearly unconstitutional, on the ground that they are special legislation and violate Section 26, Article II of the Constitution of the state.   Whether that can be taken advantage of by the plaintiffs in this case will be discussed further along.

We find that the proceedings in this case were regular.   The notice was given to the property owners of the passage of a resolution declaring the necessity for this improvement; and after the assessment was made, the plat and other proper papers were filed with the clerk, as provided by statute, and notice was published for three weeks, as the law requires, for any who wished to make complaint of the assessment, and a committee of three freeholders was appointed, as the law requires, to sit as a board of equalization, all of which is provided for in Sections 2278 and 2279.

Section 2279 provides:

''If any person objects to the assessment, he shall file his objections, in writing, with the clerk, within two weeks after

the expiration of the notice; and thereupon the council shall appoint three disinterested freeholders of the corporation to act as an equalizing board.''

No one of these plaintiffs took advantage of these provisions of the law enabling him to make complaint of the assessment if he so desired. They complained for the first time in this action, in which they ask for an injunction. The plaintiffs in the case called one witness who may be considered as an expert upon real estate values and the question of benefits, and he went over this property in his testimony, lot by lot. The defendant called two, who may be regarded as experts to some extent, having had considerable experience in matters of this kind. According to the testimony offered by the plaintiffs, the assessment on most, and perhaps all of the lots, exceeds the benefits to some extent. It goes beyond the benefit to this property according to the opinion of the expert called by the plaintiffs and according to the opinion of some of the lot owners. According to the testimony of the witnesses called by the city—two experts and one other, not so much of an expert—the benefits accruing to this property equal the assessment. These are the opinions of those witnesses. When we get into the matter of the benefits of an improvement, it is a matter of judgment or opinion—it is not a question of fact that can be positively determined. The judgment of one man differs from another.

We are of the opinion that we have no right as a court to interfere with an assessment and enjoin its collection on the ground that the benefits are not equal to the assessment unless the assessment is fraudulent or there is such a disparity as to be clearly wrong and unjust and tantamount to fraud on the part of the authorities. Where the assessment is so clearly and unquestionably excessive that there can be no material difference of opinion upon the question, we think that the court may grant relief. But where there is a mere conflict of evidence and where all the proceedings have been regular, where the notices have been given, where the proper officers have acted upon the matter and all legal steps taken and the party complains for the first time in a court of equity, in such a case, we

are of the opinion that the court ought not to interfere. To hold that the court should do so would be to require a re-examination and review by the courts in almost every assessment in this city and in every city in the state. There is hardly an assessment made for a street improvement, for a sewer or for any other public improvement, where there are not some who are of the opinion that they are assessed too heavily—that the assessment is too high. But we do not sit as a court of appeal from the action of the council or the board of equalization, to hear the case anew and review it upon the evidence and then according to our opinion determine what would be a fair assessment. All these matters have been committed to the council and the duly authorized boards to determine, and they have as much authority within their jurisdiction as the courts themselves.

The general rule, we think, is laid down in the 34 O. S., p. 551 (*Chamberlin* v. *Cleveland*). The court say, in the 9th paragraph of the syllabus:

"Where the city council determines that the amount of the assessment does not exceed the value of the benefits specially conferred, its judgment in the premises, in the absence of fraud, is final and conclusive, unless modified by the council before final determination, as provided in Section 588; but when the municipal authorities, in levying special assessments do not undertake to determine the amount of the special benefits conferred, either in respect to the amount assessed, or in the apportionment of the burden, the assessment may be enjoined; and in an action for that purpose parol evidence may be introduced to show that the authorities did not act on the proper basis."

We are unable to find. from the evidence that the action of the council in this assessment was fraudulent, or the assessment so unjust and excessive as to be tantamount to fraud. The weight of the evidence, if we determined it by the number of witnesses, is perhaps on the side of the city. The assessment, it is true, seems high. These lots are not valuable—a forty-foot lot in that neighborhood being valued at about $400, on the average—and the owners of most of them, as is shown by the evidence, are poor people, and to put an assessment on such a lot—worth $400—of $180 or $200, seems high and burdensome to people in that condition, and they feel that these lots were

of as much value before this assessment as they are now. But it is clear from the evidence and from common knowledge that such an improvement as this does add to the value of the property. The evidence shows that this territory was very low and marshy and the street covered by water—portions of it—a large part of the year, and almost impassable at times, and the paving of the street has very much improved it and added very much to the value of these lots, and while before it was almost impossible to sell a lot, as some of the witnesses testify, they can now be sold for a fair price. We are unable to find that the assessment is excessive, or that it goes beyond the limit in this special statute—twenty-five per cent. of the value after the improvement.

It is urged, however, that these two statutes applying only to the city of Toledo, are unconstitutional, and that as the assessment was made under them, it should be enjoined and the city sent back to a constitutional statute passed many years ago by which the limit is fixed at twenty-five per cent. on the taxable value of the property. These two Toledo statutes are clearly unconstitutional under the recent decisions of the Supreme Court. They are in violation of Section 26, Article II of the Constitution and would not sustain an assessment made at this time. An assessment made under these statutes now, would be held by the courts to be invalid. But at the time this assessment was made and these proceedings were had, these statutes, or similar statutes, had not been declared unconstitutional by the Supreme Court, but for more than forty years the Supreme Court had held such statutes valid and constitutional, in decision after decision reported in the volumes of the Supreme Court Reports, and when these assessments were made by the city and this improvement determined upon the city stood upon the law as it then was found in the statutes and in the decisions of the Supreme Court, and the city had a right to do so. The decisions of the Supreme Court which had been made up to that time were a part of the law of the land just as much as the statutes themselves and when the Supreme Court declared a statute unconstituional, that made it so for all purposes of property, contracts and vested rights and it remained constitutional

and valid until the Supreme Court held that such statutes were unconstitutional. The rule upon this question is stated by the Supreme Court of this state in 61 O. S., 471 (*Lewis* v. *Symmes*). I read from page 486, which is a quotation from an opinion delivered by Chief Justice Waite in *Douglas* v. *County of Pike*, 101 U. S., 677:

"The true rule is to give a change of judicial construction in respect to a statute the same effect in its operation on contracts and existing contract rights that would be given to a legislative amendment; that is to say, making it prospective but not retroactive. After a statute has been settled by judicial construction, the construction becomes, so far as contract rights acquired under it are concerned, as much a part of the statute as the text itself, and a change of decision is to all intents and purposes the same in its effect on contracts as an amendment of the law by means of a legislative enactment."

Our Supreme Court say, through Judge Shauck, delivering the opinion:

"This compendinus statement of the rule and its reasons meets the requirements of all the cases cited. Its purpose is to secure the full operation of the constitutional prohibition of laws impairing the obligation of contracts."

This question has been discussed in a very recent decision of the Supreme Court, 68 O. S., 603, *Shoemaker* v. *Cincinnati*, decided June 23, 1903. The court say, in the first paragraph of the syllabus:

"An owner of land which has been assessed for the improvement of a street is not entitled to an injunction restraining the collection of such assessment where a statute in all material respects the same as the one under which the improvement was made and the assessment levied, and the bonds of the municipality to pay the cost issued, had theretofore been adjudged valid by the highest court of the state, simply because similar legislation was held in the same court long afterwards to be in violation of the Constitution."

Judge Spear in delivering the opinion, says:

"So that the inquiry comes finally to this: Is the owner of property which has been assessed for the improvement of a street entitled to an injunction restraining the collection of such

assessment where a statute in all material respects the same as the statute under which the improvement was made and the assessment levied and the bonds of the municipality to pay the costs issued, had been theretofore adjudged valid by the highest court of the state simply because similar legislation was held by the same court long afterwards to be in violation of the Constitution? We answer the question unhesitatingly in the negative.

"It is a principle of universal application that a cause of action once finally determined between parties by a competent tribunal can not afterward be litigated between the parties or their privies by a new proceeding. It is the principle of *res judicata*. It rests not only on the private rights of the parties but it is a principle of public policy having been characterized as a 'fundamental consent of the organization of civil society.' It is equally well settled as a general proposition, admitting, however, of exceptions, that courts will adhere to and follow decisions of the highest court of the jurisdiction where the same points come again in litigation; and the rule is of universal application where the law has become settled as a rule of property, by reason of such earlier decisions, and rights have become vested on the faith of them. This is the doctrine of *stare decisis*. The broad principle lying at the base of both of these rules is embraced in the translation of the term *res judicata*, viz.: 'That the matter has been decided.' "

We hold that while these statutes are to-day unconstitutional under the recent decisions of the Supreme Court, that at the time these proceedings were had and this assessment was made, such statutes had been held to be constitutional and in this case they are to be considered as valid and constitutional enactments. As Judge Spear says further along in the opinion, it would be unjust to throw a large part of this assessment upon the city because such statutes at this late day have been held unconstitutional by the Supreme Court. The making of an improvement of this kind is in some respects in the nature of a contract between the city and the lot owners. The property owners have their obligations to perform in reference to the contract and their rights, and the city has its rights and duties. The transaction is mutual. The parties entered into it and contracted in the light of the law as it then was and their rights and duties are based upon the statutes and decisions as they then existed,

and they can not have relief now on the ground that these statutes have, since this assessment was made, been declared unconstitutional by the Supreme Court.   Under the new municipal code the limitation for such assessments is fixed absolutely at thirty-three and one-third per cent. of the taxable value of the property, beyond which an assessment can not go, and it is certain that assessment statutes should always have some limitation in them so that when property owners ask to have an improvement of this kind made they will know what the limit is.

We are of the opinion that the prayer of the petition for an injunction should be denied, for the reasons stated, and the petition dismissed, and this will be the decree.

*C. B. Hadden,* for plaintiffs.

*W. G. Denman,* City Solicitor, and *Charles K. Friedman,* Assistant City Solicitor, for defendants.